UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARIS STEPHEN WELLS,

    Movant-Defendant,

vs.

UNITED STATES OF AMERICA,

    Respondent.
_____/

No. 1:13-cr-45

Hon. Paul L. Maloney
District Court Judge

**UNITED STATES' RESPONSE TO PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
CORRECT SENTENCE OF A PERSON IN FEDERAL CUSTODY**

The government takes little issue with Defendant's statement of facts or legal discussion in his Brief in Support of his petition – up until he begins his Discussion on Page 14, at which point the lying begins. Defendant is apparently under the misapprehension that effective advocacy involves blatantly lying to try to win a point.

The Sixth Circuit Court of Appeals has directed district courts to deal harshly with section 2255 movants who lie in an effort to overturn their criminal convictions. *Arrendondo v. United States*, 178 F3d 778, 790 (6th Cir. 1999). Defendant's willingness to concoct patent falsehoods in an effort to mislead the Court on these issues should taint his credibility on all others. In any event, the Defendant's claims are devoid of merit.

Defendant raises the following false claims:

1.     Trial counsel failed to meet with him.
2.     Trial counsel failed to investigate or go to Detroit.
3.     Trial counsel failed to share discovery with Defendant.
4.     Trial counsel failed to challenge venue.
5.     Trial counsel assured Defendant he would face a 72-month sentence if he pled guilty.
6.     Trial counsel failed to conduct any pre-trial investigation whatsoever.

1

      7.      Trial counsel failed to file a motion for downward variance at sentencing.
      8.      Trial counsel failed to review the PSR with Defendant.
      9.      Appellate counsel was ineffective.

(R.182: Def's Br. at 15, PageID.1042 *et. seq*.) The government will discuss each of these issues in order.

## Trial counsel failed to meet with him (Issue 1).

Defendant falsely claims "there was not any reasonable communication from the beginning of this case…[Stroba] failed to … consult with Wells." (R.182: Def's Br. at 15, PageID.1043.) This is a materially false statement.

Paris Wells was represented by the Office of the Federal Public Defender (FPD). The FPD developed a trial and investigative team to work with Wells. "Either Attorney Stroba or his investigator met with Mr. Wells on a weekly basis, or at the longest interval, every two weeks." (R.187: Affidavit of AFPD Stroba at PageID.1067.) Prior to appeal, the FPD invested 485 hours in the legal representation of Wells. (*Id.* at PageID.1069.) "Wells was always completely and fully informed of the status of his case, the discovery that was available and received, the status of the investigation being conducted by the trial team, and the results thereof." (*Id.*)

At the time of his plea, Wells indicated he was completely satisfied with the work of the FPD. (R.159: Plea Trans at PageID.915, 916.) When asked about whether he understood his plea agreement, Wells stated, "Yes. We went over everything from A to Z…we covered everything." (*Id* at 916.) At the time of Sentencing, Wells indicated that he was satisfied with the work of Defense counsel and took exception only to the weight of the controlled substances he was being held accountable for. Wells stated that, "Prior to all the way up until last week, I ain't had no problems with Mr. Stroba. He was doing

good, but this was like the key thing, this is real major to me." (R.157: Sent. Tr., PageID.857.) As Wells noted in his statement of facts, the Court resolved a firearm and a drug weight issue in Wells' favor – just as his attorney argued; therefore, his concerns were unfounded. At the conclusion of the sentencing proceeding, Wells volunteered that, "Mr. Stroba and I had our problems, but he's a good guy, he is a good attorney." (*Id* at 880.) The Defendant now wants the Court to accept that he was wrong, and Mr. Stroba was a poor attorney; the record establishes the opposite.

**Trial counsel failed to investigate or go to Detroit (Issue 2) and Trial counsel failed to conduct any pre-trial investigation whatsoever (Issue 6).**

Defendant claims that, "Wells instructed Stroba to conduct his own investigation of his case. Specifically, he asked Stroba to go to Detroit…to look at the evidence … Stroba refused saying that gas is to (sic) high to travel from the Western District to the Eastern District." (R.182: Def's Br. at PageID.1045.) These are patently false statements. As noted by trial counsel, the FPD investigation included:

> … a joint trip by Attorney Stroba and the investigator to Wayne County, Michigan, to speak with witnesses, and visit the scenes of relevant venues. This included visiting the defendant's residence with his girlfriend (and main co-conspiring defendant), the defendant's second house where narcotics and firearms were located upon execution of a search warrant, the defendant's business location (the alleged site of some drug transactions), and a business that the defendant had advised would support his claims of legitimate work that the defendant had been doing. The trip also included the attempt to serve subpoenas to witnesses (some successfully served, some not), and to speak to police agents involved in the defendant's arrest and the execution of search warrants. This occurred June 24, 2014, and was a daylong trip.

(R.187: Affidavit of FPD Stroba at PageID.1068.) The investigator met with Wells two days later and discussed the results of the trip. (*Id*.) The investigator made at least one

3

independent trip to Detroit as well. (*Id* at PageID.1069.) Defendant knew this claim was false and has propounded a lie to this Court.

**Trial counsel failed to share discovery with Defendant (Issue 3)**

Defendant states, "Wells also requested that Stroba provide him with the government's discovery in his trial case file to no avail." (R.182: Def's Br. at PageID.1045.) This is also a false statement because, "[A]t all times Mr. Wells had access to the discovery received from the government, as well as steps being undertaken to prepare the case for a plea or trial. The investigator traveled to the defendant's holding facility to review new information as it was received…." (R.187: Affidavit of FPD Stroba at PageID.1067.) "Wells was always completely and fully informed of the status of his case, the discovery that was available and received…." (*Id*. at PageID.1069.)

**Trial counsel failed to challenge venue (Issue 4)**

While Defendant challenges attorney Stroba's apparent refusal to file a motion for a change of venue, he fails to recognize that such a motion was indeed filed on his behalf by the attorney who preceded Stroba (R.16: Motion for Change of Venue) and it had already been denied by the Court. (R.53: Order.) Wells appealed this decision and lost that appeal. There was nothing for the FPD to do concerning this issue prior to appeal and, since the Court of Appeals found the denial of the motion proper, absolutely no prejudice to the Defendant in the FPD's refusal to file a second meritless motion.

## Trial counsel assured Defendant he would face a 72-month sentence if he pled guilty. (Issue 5)

Wells assertion that he was promised a reduced sentence of only 72 months if he pled guilty is absurd. At the time of his plea, Wells stated, under oath, that no such promise was made to him. (R.159: Plea Tr. at PageID.924-25.)

Moreover, the original plea agreement included the parties agreeing to a binding 15-year sentence. (R.75: Plea Agreement.) As noted by the Defendant on appeal, this Court rejected that agreement because the guideline range called for a sentence roughly double in length and this Court stated that a sentence of *greater* than 15 years was warranted. (R.93: Order Rejecting Plea Agreement; R.164: Slip Opinion of USCA.) The Defendant entered his second guilty plea fully aware that the parties were engaged in a desperate effort to limit his sentence to only 240 months – the statutory maximum. There was never any discussion of a 72-month sentence being even remotely possible.

Wells was also aware that two complete sets of initial and final presentence reports were prepared and presented to him. In all four documents, the advisory guideline range was calculated to include a 360 month to Life sentence range. The first two were prepared prior to this second guilty plea. (R.87: Initial PSR; R.89: Final PSR.) Wells knew at the time of his second guilty plea that the sentencing guidelines would recommend a sentence in excess of 15 and likely more than 20 years.

Wells cannot with any credibility claim that his attorney told him that he faced a sentence 80% below the advisory guideline range if he tendered a second guilty plea – after this Court had already informed Wells that a recommendation of a sentence 50% below the advisory guideline range was unacceptable and was rejected.

**Trial counsel failed to file a motion for downward variance at sentencing (Issue 7) or to review the PSR with him (Issue 8)**

Wells contends that trial counsel did a poor job at sentencing, stating, "Stroba failed to file any kind of motion for a downward variance on behalf of Wells." (R.182: Def's Br. at ID #1051.) This is patently false; a variance motion was filed and argued. (R.135: Motion for Downward Variance, PageID.630; R.136: Sent. Mem., PageID.631.) Moreover, the Defendant in his own statement of facts relates that the motion for downward variance was filed, yet inexplicably he claims otherwise in argument. (*Compare* R.182: Def's Br. at PageID.1032, 1035 (notes a variance motion was filed) with Def's Br. at PageID.1051 (argues no motion filed).)

Wells argues that Stroba failed to discuss the PSR with him or to argue objections, but that is also patently false and he argues against the same facts he has cited. (*Compare* R.182: Def's Br. at PageID.1035 (three objections were raised and argued) with Def's Br. at PageID.1050-51 (argues Stroba failed to raise objections).) Wells has acknowledged that trial counsel raised three substantive objections to guideline scoring in the PSR and prevailed on two of them. (*Id.* at PageID.1035 (resolving objections to the drug quantity and firearm enhancement in Wells' favor, losing an objection concerning a leadership enhancement).) In this regard, trial counsel was highly effective.

Additionally, the claim that trial counsel failed to review the PSR with him is also false. The Defendant received all four (4) versions of the PSR in this case, although the final, amended PSR was not delivered to him until shortly before sentencing. Wells and trial counsel acknowledged that the final version was "pretty much the same" as the earlier versions; Wells declined the opportunity to review the final PSR at more length. (R.157: Sent Tr. at PageID.854-58.) Moreover, Wells has failed to identify any prejudice or any

6

material difference between the fourth and final version of the report and the previous three that he had reviewed at length.

Finally, Wells contends that trial counsel failed to object to the below-guideline sentence being substantively unreasonable. Defendant cannot prevail on this claim because the Court of Appeals found that the sentence imposed was, in fact, substantively reasonable. It is well settled that a §2255 motion may not be used to relitigate issues that were addressed on appeal unless highly exceptional circumstances are present. *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). *See Also Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996)).

Moreover, Wells' argument that, "there is a reasonable probability that the Court would have imposed a less harsh sentence had Stroba been prepared," (R.182: Def's Br. at PageID.1051) is not only self-serving, but flies in the face of all rational thought. The district court had already rejected a fifteen-year sentence as too lenient and expressed reservation at accepting a plea that capped the sentence at a twenty-year maximum – the advisory guideline recommended a much more severe sentence. Nothing in the record suggests that a lesser sentence was likely or even justified.

**Ineffective assistance of Appellate Counsel (Issue 9)**

Wells suggests that Appellate Counsel was ineffective because he failed to communicate with him, failed to raise "stronger issues" on appeal and did not advocate strongly enough. In raising this issue, he states that, "Wells must show that appellate counsel failed to raise an obvious issue that was stronger than the other claims raised and that prejudice flowed from that failure." (*Id* at PageID.1052.) Wells, however, failed to identify any other such issue, therefore he cannot establish any basis for concluding that a

7

more meritorious appeal issue existed than the ones raised by his appellate counsel. Wells summarizes his own argument as "Wells urged Bicknell to argue the issues more aggressively," and bases his entire claim on the assertion that Bicknell was not forceful enough in making the arguments that were actually raised and decided. The forcefulness of advocacy has never supported a claim of ineffectiveness of counsel.

Wells also claims that appellate counsel failed to communicate with him, but this appears false as well. According to the affidavit of appellate counsel,

> I corresponded with Mr. Wells at least five times by written letter and several additional times through the *Corlinks* email system. I explained to Mr. Wells that in his direct appeal, the Sixth Circuit would only consider errors reflected in the record and court hearing transcripts…In correspondence dated December 13, 2014, I explained to Mr. Wells that many of the errors he had written me about in his case involved communications and interactions with his trial counsel that fell outside the appellate record…I sent Mr. Wells a copy of the submitted brief, as well as a short explanation of the issues I raised and the challenge of appealing a guilty plea.

(R.189: Bicknell Affidavit at PageID.1076.) It therefore appears that Wells DID consult with appellate counsel and tried to raise several improper issues that were not supported by the trial record. Appellate counsel correctly refused to raise those issues on appeal. Wells has wholly failed to establish that he was denied a fair and meaningful appellate review of his case and therefore cannot prevail. Wells is entitled to no relief.

## CONCLUSION

The Court should deny Wells' petition without an evidentiary hearing, because the record is clear that his Constitutional rights were not violated nor was counsel ineffective. Wells' assertions are shown to be patently false based on the record in this case. Further, no Certificate of Appealability should be authorized.

                                      Respectfully submitted,

                                      ANDREW BYERLY BIRGE
                                      Acting United States Attorney

Dated: May 10, 2017                 /s/ Mark V. Courtade
                                      MARK V. COURTADE
                                      Assistant United States Attorney
                                      PO Box 208
                                      Grand Rapids, MI 49501-0208
                                      Tel. (616) 456-2404