UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PARIS STEPHEN WELLS, ) | |
|                  Petitioner, ) | |
| ) | No. 1:13-cr-45-01 |
| -v- ) | |
| ) | Honorable Paul L. Maloney |
| UNITED STATES OF AMERICA, ) | |
|                  Respondent. ) | |
| _____ ) | |

## OPINION AND ORDER DENYING § 2255 PETITION FOR HABEAS RELIEF AND MOTIONS FOR HEARING

Paris Wells filed a petition under 28 U.S.C. § 2255 seeking habeas relief. Having carefully reviewed the record, the Court concludes that it can resolve the dispute without a hearing. Petitioner has not established that counsel provided constitutionally deficient assistance before or as part of sentencing. Nor has petitioner established that appellate counsel provided ineffective assistance. The Court will deny the motion.

I.

In March 2013, the Government filed a superseding indictment charging Wells with a conspiracy to distribute one kilogram or more of heroin. (ECF No. 34.) The superseding indictment identified Markita Choice as one other individual involved in conspiracy. Wells entered into a reduced-sentence plea agreement, a "C" plea, which the Court rejected. (ECF No. 93.) In July 2014, the Government filed a superseding felony information also charging Wells with a conspiracy to distribute heroin. (ECF No. 122.) The document indicated that Wells conspired with Choice, Ahmed Green and unknown others to distribute a substance containing a detectable amount of heroin. The superseding felony information did not

identify a particular quantity. Defendant then entered into a second plea agreement which the Court accepted. (ECF No. 131.) The transcript of the hearing establishes that Wells made his initial appearance on the superseding felony information, waived the indictment and agreed to plead guilty to the superseding information without the benefit of a plea agreement. (ECF No. 159 Plea Trans. at 2-3 PageID.913-14; at 7 PageID.918.) The statutory maximum for the crime of conviction was 20 years, which was below the advisory guidelines range. On September 18, 2014, the Court sentenced Defendant to 240 months imprisonment. (ECF No. 139.) The Sixth Circuit Court of Appeals affirmed. (ECF No. 164.)

Wells filed a motion for modification of his sentence based on Amendment 782, a retroactive change to the Sentencing Guidelines, which the Court granted.

In February 2016, the Court entered an amended judgment imposing a sentence of 211 months imprisonment. (ECF No. 176.)

Wells then filed this pending § 2255 motion for habeas relief. (ECF No. 181.) Also pending are three motions for an evidentiary hearing (ECF Nos. 201, 219 and 227) and a motion to amend or correct the § 2255 motion (ECF No. 226).

II.

To merit relief under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abramson*, 507 U.S. 619, 637 (1993)). As a threshold matter, a prisoner seeking relief under § 2255 must allege (1) an error of constitutional magnitude, (2) the

sentence imposed falls outside the federal statutory limits, or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-497 (6th Cir. 2003)). Generally, claims not raised on direct appeal are procedurally defaulted and may not be raised in a § 2255 motion, a collateral attack, unless the petitioner shows either (1) cause and actual prejudice, or (2) actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 626-27 (1998). Wells has not alleged he is actually innocent. Wells attempts to avoid the procedural default rule by arguing his counsel provided ineffective assistance.

The right to counsel at a criminal trial, enshrined in the Sixth Amendment, assures the fairness and legitimacy of the trial process. *See Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Establishing ineffective assistance of counsel can therefore excuse the failure to raise particular claim at trial or on direct appeal. *See id.* at 383; *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993). Our Supreme Court outlined the two-part test for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must first show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. When reviewing allegations of ineffective assistance, this Court must "strongly presume[]" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]" *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). The defendant must also show that, but for counsel's errors and omissions, a reasonable probability exists that the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. Explained another

way, the defendant must show that the alleged errors in counsel's performance created actual prejudice and worked to the defendant's substantial disadvantage. *United States v. Frady*, 456 U.S. 152, 170 (1982). For this second factor, the defendant must show actual prejudice, not the mere possibility of prejudice. *Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986).

The defendant must show more than a merely inadequate defense. The defendant must establish constitutionally deficient assistance that cause him "to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc). Necessarily then, when the alleged underlying error by counsel lacks merit, counsel cannot be deemed constitutionally ineffective for failing to raise the issue. *See Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments in order to avoid a charge of ineffective assistance of counsel.").

In this action, Wells pled guilty and did not proceed to trial. In order to succeed on a § 2255 motion involving a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

### III.

Wells raises ineffective assistance of counsel claims based on events prior to his plea, as part of sentencing, and during his appeal.

In its opinion affirming Wells's sentence, the Sixth Circuit summarized the events leading to Wells's arrest and also the relevant statements and admissions he made at his sentencing.

> This case arises from a conspiracy to distribute heroin between Defendant, his girlfriend Markita Monik Choice, and Ahmed Green. In February 2013, Green was arrested in Grand Rapids, Michigan. At the time of his arrest, Green had approximately 100 grams of heroin in his possession that he intended to distribute to persons located in the Western District of Michigan. As part of his post-arrest cooperation with law enforcement authorities, Green informed police that he had been securing heroin from Defendant for more than a year by calling Defendant from Grand Rapids to order heroin, driving to Detroit, Michigan, to pick up the heroin from Defendant, and bringing the heroin back to Grand Rapids for distribution.
>
> After conducting a controlled purchase of 100 grams of heroin from Defendant at the direction federal agents, Green ordered another 100 grams from Defendant on February 27, 2013. Defendant agreed to supply the heroin, and federal agents conducting surveillance at Defendant's residence in Detroit observed Defendant and Choice getting into a vehicle, driving to Defendant's "stash house," and then driving to the location where Defendant had arranged to meet Green. Federal agents stopped and arrested Defendant and Choice on their way to the meeting place. Pursuant to a search warrant, law enforcement officers also searched Defendant's stash house, finding approximately 280 grams of heroin, three hydraulic presses for compressing and repacking heroin, and "other substantial evidence that the defendant was involved in selling heroin." (R. 159 Second Plea Hr'g Tr., PageID #927).
>
> At the sentencing hearing held July 2, 2014, Defendant stated, based on his telephone call with Green, that there was an agreement between Defendant, Choice, and Green for Green to purchase heroin from Defendant on February 27, 2013. Defendant also admitted to selling heroin to Green between late summer 2012 and his arrest on February 27, 2013. Finally, in a proffer statement made on April 12, 2013, Defendant informed law enforcement authorities that he sold heroin to "individuals" in Kalamazoo and Grand Rapids, Michigan, in quantities of 10 to 30 grams.

*United States v. Wells*, 631 F. App'x 408, 410 (6th Cir. 2015).

### A. Failure to Communicate

Wells contends that he did not have "any reasonable communication" with counsel "from the beginning of this case . . . so that Wells could effectively participate in his legal representation." (ECF No. 182 Def. Br. at 15 PageID.1043.) Wells also contends that counsel "failed to reasonably consult with [him] about the means to be used to accomplish his objectives." (*Id.*) For this claim, Wells relies on Rule 1.4 of the Michigan Rules of Professional Conduct.

Wells has not established ineffective assistance of counsel based on a lack of reasonable communication. Wells's brief undermines any claim about a lack of or a failure to communicate. Wells's brief is replete with examples of his specific requests for counsel for interviews or to conduct investigations. The Government points to trial counsel's affidavit, in which counsel states that, by June 2013, either he or an investigator met with Wells every week or two to discuss the case. (ECF No. 187 Stroba Aff. ¶ 6 PageID.1067.)

Even if Wells has presented some evidence of his dissatisfaction with the quality and quantity of communication, those facts do not provide a legal basis for finding a violation of his Sixth Amendment right to counsel.

> Under the *Strickland* standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel. When examining attorney conduct, a court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictive as to constitutionalize particular standards of professional conduct and thereby intrude into a state's proper authority to define and apply the standards of professional conduct applicable to those who practice in state courts.

*Nix v. Whiteside*, 475 U.S. 157, 165 (1986). Wells has not identified any authority suggesting that infrequent or one-sided communication amounts to constitutionally deficient assistance.

Considering attorney-client communication claims in another context supports the conclusion that Wells has not established ineffective assistance of counsel. Typically, courts consider the breakdown of communication between an attorney and client in the context of a request for new counsel by a defendant or a request to withdraw by an attorney. In those situations, courts consider whether the situation has "resulted in a total lack of communication preventing an adequate defense." *United States v. Powell*, 847 F.3d 760, 778 (6th Cir. 2017). A defendant's "differences of opinions with his attorney do not create a complete breakdown of communication that compromises his defense." *Id.* at 779 (quoting *United States v. Marrero*, 651 F.3d 453, 466 (6th Cir. 2011)). And, a defendant does not show a "total lack of communication" by describing his "dissatisfaction with the responses he got from his lawyer." *United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004). Wells's description of the counsel's alleged failure to communicate constitutes a difference of opinion and a dissatisfaction with counsel's responses and not a complete breakdown of communication.

### B. Pre-Trial / Failure to Investigate

Wells argues that trial counsel failed to conduct any pretrial investigation. Wells identifies a number of specific requests he made, which the Court addressed below.

*Strickland* offers some insight concerning a criminal defendant's burden when alleging a failure to investigate. "A convicted defendant making a claim for ineffective

7

assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. With this guidance in mind, the Court considers Wells's specific examples of counsel's failure to investigate.

### 1. Dates in the Indictment

Wells complains that he told counsel about footage on security cameras that would have established that the dates in the indictment were wrong. In the initial indictment, the Government alleged the conspiracy occurred from the summer of 2011 through February 13, 2013. (ECF No. 1 PageID.1.) The superseding indictment alleged that the conspiracy occurred from the summer of 2011 through February 27, 2013. (ECF No. 34 PageID.96.) Wells asserts that the footage on his security camera would show that Green came to Wells's shop only a couple of times. And, Green was arrested only two weeks before Wells was arrested. Wells reasons that the indictment at best should identify the crime as occurring for

two weeks, not going back to the summary of 2011 or 2012.[1] Finally, Wells contends that when counsel did attempt to review the security footage, counsel entered the wrong password three times and erased the tape.

Wells has not established that counsel's decisions concerning the security camera footage and counsel's decisions concerning the dates in the indictment amount to ineffective assistance in violation of the Sixth Amendment. Wells has not clearly explained how the video from the security camera footage would implicate the dates of the conspiracy.[2] Following his arrest in 2013, Wells admitted to law enforcement that he had been selling heroin for previous five years. (*See* ECF No. 153 Mot. Trans. at 14 PageID.782; ECF No. 133 Final Presentence Report at 7 PageID.603.) Nor has Wells established how counsel's failure to act affected Wells's decision to plead guilty. Wells pled guilty to a conspiracy charge that did not include any specific quantity. At the plea hearing, the Magistrate Judge asked Wells if he sold heroin to Green from about the summer of 2012 through February 2013 and Wells responded "Yes, I did." (Plea Trans. at 19 PageID.930.) The Final Presentence Report also contains evidence of text messages between Wells and Green going back to the summer of 2012. (ECF No. 133 Final PSR at 8 PageID.604.)

---

[1] At the change of plea hearing, the Government acknowledged that Wells insisted that his involvement began in the summer of 2012, not 2011. (ECF No. 159 Plea Trans. at 17 PageID.928.) Counsel for the Government then stated: "The government accepts that as a sufficient time between September of 2012 and February of 2013 to establish his involvement in the same conspiracy that was charged by the grand jury in the original Indictment, and therefore, do not believe that that will or should be a major issue in accepting the guilty plea today." (*Id.*)

[2] Although it is possible, the Court doubts that Wells recorded each and every overt act relevant to the charged conspiracy. Wells has not alleged or established that he only acted in furtherance of the conspiracy at the shop and in view of the security camera. The problem for Wells with the security footage here is not what it did record, but what it did not record.

### 2. Discovery and Investigation

Wells argues that counsel failed to provide him with the Government's discovery. Wells insists counsel refused to travel to Detroit to investigate the residence and stash house.

Wells has not established that counsel provided ineffective assistance. Wells has not identified any particular evidence counsel failed to share. In his affidavit, counsel states that "Wells had access to the discovery received from the government." (Stroba Aff. ¶ 7 PageID.1067.) And, even when counsel himself did not share the information with Wells, the investigator made the trip to the facility where Wells was held "to review new information when it was received." (*Id.*) If a factual dispute exists about whether information about the Government's evidence was or was not shared, Wells has not explained how the lack of access to the Government's evidence affected his decision to plead guilty instead of going to trial.

The Court need not accept Wells's assertions that counsel refused to travel to Detroit to investigate. Wells has not explained how he has personal knowledge of counsel's travel. Counsel states that he and the investigator did travel to Detroit to speak with witnesses and to visit the scenes of the different venues, including Wells's residence, stash house and place of business. (Stroba Aff. ¶ 10 PageID.1068.)

### 3. Ahmed Green

Wells makes a number of arguments about Green. Wells contends Green has admitted he lied to law enforcement about his involvement with Wells. Wells asserts that counsel provided ineffective assistance by failing to interview Green.

The Government disclosed its concerns about using Green as a witness at the initial plea hearing in January 2014. (ECF No. 155 Initial Plea Hrg. at 4 PageID.802.) In particular, the Government acknowledged that, because of subsequent events, it could not rely on Green's statements that Wells was his only supplier and that Wells had sold him, over time, as much as nine kilograms of heroin. (*Id.* at 3-4 PageID.801-02.) Green also wrote a letter in 2014 in which he claims that he exaggerated his purchases from Wells and that he lied to Wells about where he (Green) was living. (ECF No. 226-1 PageID.1542.)

Wells has not established that the counsel provided ineffective assistance for any reason related to Green. Because of the Government's disclosures at the January 2014 plea hearing, counsel was aware of at least some of the problems with Green's credibility, even if he did not personally interview Green. Wells has not specifically identified the alleged lie to which Green has admitted and Wells has not explained how that lie affected the criminal action against him. Green worked with law enforcement to make a controlled buy from Wells and then worked with law enforcement again to arrange for a second purchase from Wells. Green's credibility problems did not affect the progress of the criminal action against Wells. The Final Presentence Report includes evidence of text messages between Wells and Green dating back to the summer of 2012 in which the two arrange for multiple transaction of heroin that in total exceed one kilogram. (Final PSR at 8 PageID.604.) Wells admitted at his second plea hearing that he had sold heroin to Green going back to the summer of 2012. Wells has not convinced the Court that had counsel interviewed Green, counsel would have obtained information that would have affected any of counsel's decisions concerning the defense or Wells's decision to plead guilty.

4. Venue

Wells asserts that he asked counsel to file a motion for a change of venue, which counsel allegedly refused to do. Wells reasons that he resided in the Eastern District of Michigan, the controlled buys occurred in the Eastern District and he was arrested in the Eastern District.

Wells has not established ineffective assistance of counsel. The first attorney who represented Wells filed a motion for change of venue. (ECF No. 16.) This Court denied the motion. (ECF No. 53.) Counsel referred to this concern again at the sentencing. (ECF No. 157 Sentencing Trans. at 12 PageID.862.) On appeal, the Sixth Circuit found that Wells waived any challenge to venue through his plea. The circuit court also held that venue was proper in the Western District of Michigan. And again, Wells has not explained how counsel's decision not to file a second motion for change of venue affected Wells's decision to plead guilty.

5. Arrest and Search

Wells argues that counsel failed to challenge the arrest and subsequent search. Wells insists that he did not violate any traffic laws, which was the justification used to initiate a traffic stop. Wells contends law enforcement officers never showed him a search warrant. Well also argues that the Grand Rapid's police did not have any authority to cause his arrest in Detroit. Finally, Wells contends that he cannot read well without his glasses and that he signed the *Miranda* warning at his shop.

Wells has not established ineffective assistance of counsel. The record establishes that a magistrate judge approved an arrest warrant for Wells in February 2013. (ECF No.

3.) In resolving the challenge to venue, this Court and the Sixth Circuit explained why Wells could be prosecuted in the Western District of Michigan, which would encompass the authority to issue an arrest warrant. The facts recited by the Sixth Circuit describing Wells's actions prior to his arrest demonstrate that law enforcement had a sufficient basis to believe that evidence of a crime would be found in the vehicle. "Police may conduct the search of a vehicle incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *United States v. Alexander*, 954 F.3d 910, 917 (6th Cir. 2020) (citation and internal quotation marks omitted). The Sixth Circuit noted that law enforcement had a search warrant for Wells's stash house. Wells has not alleged that the officers failed to inform him of is *Miranda* rights. The Sixth Circuit found that Wells admitted to selling heroin to individuals in Kalamazoo and Grand Rapids in a proffer statement in April 2013. Wells has not demonstrated that had counsel challenged the arrest or search that the challenge would have been successful.

6. Plea Discussion

Wells argues that counsel advised him that he would face a 72-month sentence if he accepted the plea offer. Wells explains that counsel scored Wells as a level 26 offender with a criminal history category III. Wells also explains that counsel calculated that Wells would be held responsible for 100 to 400 grams of heroin.

The Court cannot accept Wells's allegations here and Wells has not established ineffective assistance. Wells took an oath at his plea hearing attesting to the need to tell the truth or he would be subject to penalties for perjury. (Plea Trans. at 4 PageID.915.) Wells agreed that counsel had advised him about the plea stating that "[w]e went over everything

13

from A to Z." (*Id.* at 5 PageID.916.) When asked if any promises were made to him, Wells replied "no." (*Id.* at 14 PageID.925.)

In addition, Wells's assertions here are incredulous when considered in the light of the Court's rejection of the first plea agreement. In that agreement, the parties explained that Wells faced a maximum charge of life imprisonment but agreed that the appropriate sentence would be 15 years. (ECF No. 75 PageID.259.) The Probation Office drafted a presentence report to which Wells filed objections. (ECF Nos. 87 and 88.) The first version of the final presentence report summarized the quantities of controlled substances that would be considered relevant conduct, which was well in excess of 100 to 400 grams. (ECF No. 89.) The Court declined to accept the plea because the 15-year sentence was too much of a reduction from the advisory guidelines range. (ECF Nos. 155 Hrg. Trans. at 16 PageID.814.) The Sixth Circuit affirmed this Court's decision rejecting the plea agreement. Wells cannot now credibly claim that counsel later advised him that he would likely receive an even lower sentence.

### 7. Conspiracy Charge

Wells argues that he asked counsel to get the charged crime changed from a conspiracy to a possession and distribution charge. Well insists that only one transaction with Green occurred and he was arrested before a second controlled purchase could occur. Wells also contends that a conspiracy requires an agreement with multiple people. Wells argues that a government informant cannot be considered one of the conspirators.

To prove a criminal conspiracy charge, the Government must show an agreement between two or more people. *United States v. Hines*, 398 F.3d 713, 718 (6th Cir. 2005). "It

is settled that proof of an agreement between a defendant and a government agent or informer is not sufficient to support a conspiracy conviction." *United States v. Hayden*, 68 F. App'x 530, 532 (6th Cir. 2003). This rule applies only to situations where the agreement or conspiracy involves a single defendant and the government informant. *Id.* Evidence of the agreement between the defendant and a government informant may, however, be used as evidence to prove a conspiracy between the defendant and other conspirators. *Id.* The Government does not have to name, charge or convict the other participants in a conspiracy in order to prove that the defendant participated in a conspiracy; "[a] defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, so long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction." *Id.*

Wells has not established ineffective assistance of counsel for the failure to challenge the conspiracy charge. The superseding indictment and the superseding felony information both identified Markita Choice as a co-conspirator. The Government's decision not to prosecute Choice as a participant in the conspiracy does not resolve this argument in Wells's favor. In addition to the facts outlined in the Sixth Circuit opinion, the Final Presentence Report states that, after he was arrested, Wells told officers that Choice had heroin concealed on her person, which the officers later retrieved. (Final PSR at 5 PageID.602.) The circumstances leading to the arrest, Wells's statement to the police, and the quantity retrieved (over 130 grams) from Choice, provide at least inferential support for a conspiracy.

### C. Sentencing

Wells argues that prior to sentencing he had no idea what his sentence would be. Wells contends that counsel estimated about 72 months and later informed Wells about the 15-year plea. Wells argues that counsel filed objections to the presentence report but did not argue the objections at sentencing. Wells asserts that counsel should have informed the Court that Green lied. And, Wells argues that counsel failed to request a downward departure or argue that the sentence was substantively unreasonable.

None of these claims find sufficient factual support to conclude that counsel provided ineffective assistance at sentencing. At sentencing, counsel discussed his reviews of the versions of the presentence report with Wells. (Sentencing Trans. at 3 PageID.853.) Wells had not fully reviewed the latest version, so the Court offered Wells time to look it over. (*Id.* at 4 PageID.854.) Wells declined. (*Id.*) The report identified the advisory guidelines range. Counsel did explain and argue his objections to the PSR at sentencing. (*Id.* at 9-15 PageID.859-65.) Wells has not explained why raising concerns about Green at sentencing would have made a difference to his sentence. At sentencing, the Court sustained Wells's objection to the drug quantity which was largely based on the early representation that Green made to law enforcement. (Sent. Trans. at 20 PageID.870.) Counsel did file a motion seeking a variance. (ECF No. 135.) Counsel's failure to object or argue at sentencing that the sentence imposed was substantively unreasonable did not affect Wells's appeal. On appeal, the Sixth Circuit reviewed the substantive reasonableness of the sentence imposed under the abuse of discretion standard, not the plain error standard. The circuit court affirmed the substantive reasonableness of the sentence imposed.

### D. Appeal

Wells broadly argues that appellate counsel failed to advance stronger claims than the three that were raised on appeal.

Wells has not established that appellate counsel provided constitutionally defective assistance. Wells offers speculation only. He does not identify what arguments appellate counsel should have raised. Nor does Wells explain why raising different arguments would have made a difference on appeal. Wells does contend that appellate counsel should have been more aggressive. Wells does not provide any authority suggesting that a lack of aggressiveness or persuasiveness can amount to ineffective assistance of counsel.

### IV.

Wells filed a motion seeking leave to amend his habeas motion to include new evidence. (ECF No. 226.) Wells attaches a letter from Ahmed Green. (ECF No. 226-2.)

The Court will deny Wells's motion for leave to amend. Although Green might have written this letter recently, the issue itself is not new. Green again states that he gave law enforcement bad information after Green was arrested. Counsel, the Government and the Court were all aware of problems with Green's credibility prior to Wells's plea and sentence. The Final Presentence Report contains evidence establishing a relationship between Wells and Green going back to summer 2012. The quantity of heroin involved based on that evidence alone (text messages) exceeds one kilogram, which was sufficient for the crime of conviction. The additional drug quantity attributed to Wells in the initial presentence report was based largely on Green's statements to law enforcement. Counsel object to that quantity and the Court sustained the objection at sentencing. To the extent Green indicates he misled

law enforcement, his misleading statements have no bearing on Wells's arrest, the indictment, the crime of conviction, or the determination of the sentencing guidelines range.

IV.

Wells has filed multiple requests for an evidentiary hearing concerning his pending § 2255 motion for habeas relief. (ECF Nos. 201, 219 and 227.)

The Court will deny Wells's requests for an evidentiary hearing. When resolving a § 2255 motion, courts may hold a hearing to make findings of fact "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). A court need not hold an evidentiary hearing when the petitioner's "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (citation omitted). The Court finds that record conclusive contradicts most Wells's factual allegations. The Court also concludes that other allegations, specifically the alleged advice by Counsel concerning Wells's sentence, are inherently incredible.

V.

Wells has not established that trial or appellate counsel provided ineffective assistance. Having carefully considered the briefs and the record, the Court can resolve the motion without an evidentiary hearing. For many of Wells's argument, the record contradicts his assertions. For example, a motion to change venue was filed and counsel did argue objections to the final presentence report at the sentencing hear. And, while the record does not establish what advice counsel did provide Wells, the record does include

information that makes Wells's assertions inherently incredible. Because the Court rejected the initial plea agreement for a sentence of 15 years, Wells cannot credibly assert that counsel later advised him that he would likely be sentenced to 72 months. For other arguments, Wells has not established that how the failure to act would have changed his decision to plead guilty. For example, although counsel did not interview Green, the Government disclosed its concerns about using Green as a witness and counsel objected to calculating the total amount of controlled substances using Green's initial statements to law enforcement, an objection the Court upheld.

The Court has separately reviewed motion and briefs for the purpose of determining whether to issue a Certificate of Appealability. The Court concludes that reasonable jurists would not debate whether Wells's claims should have been resolved in a different manner. The Court will therefore deny a Certificate of Appealability.

## ORDER

Consistent with the accompanying Opinion, the Court **DENIES** Paris Wells's motions for an evidentiary hearing (ECF Nos. 201, 219, and 227), **DENIES** Wells's § 2255 motion for habeas relief (ECF No. 181), and **DENIES** Wells's motion to correct or amend (ECF No. 226). The Court also **DENIES** a Certificate of Appealability. **IT IS SO ORDERED.**

Date:   May 13, 2022                                                       /s/  Paul L. Maloney
                                                                           Paul L. Maloney
                                                                           United States District Judge